James L. Gardner, Plaintiff-Appellant, v. Village of Chicago Ridge, a Municipal Corporation, et al., Defendants-Appellees.

Gen. No. 53,380.

First District, Fourth Division.

August 19, 1970.

Rehearing denied October 5, 1970.

Reidy, Gross & Dee, and Jurco, Damisch & Sinson, of Chicago (Richard H. Lucy and James R. Mitchell, of counsel), for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (Harold W. Huff, of counsel), Crooks & Gilligan, Sullivan & Sullivan, and Dowd, Dowd & Dowd, of Chicago, for appellees.

MR. PRESIDING JUSTICE STAMOS delivered the opinion of the court.

Plaintiff sued the Villages of Chicago Ridge and Worth, police officers Richard Demblon and Sgt. Bernard Bartuch of the Village of Worth Police Department, police officers Stanley Wank and Steve Horvath of the Village of Chicago Ridge Police Department and Frank Skubis, Gary LaValley, Richard Souliotis and Larry Posthuma for personal injuries he sustained. The theory of plaintiff's case is that, under the circumstances shown by the evidence, defendant police officers and villages were negligent in not protecting him from attack by defendants Souliotis and LaValley.

This is the second occasion that this litigation has been before this court for review. The initial appeal was also by plaintiff from an order dismissing the complaint as to the municipalities. As to the duties of the police under the circumstances of this case, we refer to the opinion in 71 Ill App2d 373, 219 NE2d 147, which held that the dismissal was erroneous and remanded the cause. A trial ensued and at the close of plaintiff's

evidence the court directed a verdict in favor of the four police officers and their respective municipalities.[1]

■ Plaintiff correctly contends that the trial court's action must be viewed by the standard enunciated in Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504, wherein the court stated at page 510:

> ". . . verdicts ought to be directed . . . only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

Generally, the facts, taken in their aspect most favorable to plaintiff, are as follows: Plaintiff was employed as a truck driver. He also held the position of trustee for the Village of Chicago Ridge and was Chairman of the police committee of the Board. On March 8, 1962, he was a chaperone at a teenage dance being held in the Legion Hall in Chicago Ridge, when defendants Richard Souliotis, Gary LaValley and Frank Skubis entered the premises. They had obviously been drinking and when advised to depart, they treated plaintiff to a torrent of obscenity and profanity. They emerged from the building and continued their abuse and threatened plaintiff that they would return. Plaintiff went to the telephone to call the Chicago Ridge police and just as he completed dialing, he was grabbed by Souliotis who struck plaintiff and told him that if plaintiff summoned the police, these defendants would put him in the hospital. They then entered their car and drove off. Plaintiff

---

[1] Defendants Souliotis, Skubis and Posthuma were dismissed from the instant litigation just prior to trial, Souliotis and Skubis having died. After the directed verdicts were granted in favor of the police officers and their respective municipalities, the trial continued and resulted in a $20,000 jury verdict against LaValley, who failed to appear or defend. This judgment is not involved in this appeal.

immediately telephoned the Chicago Ridge police, advising them of what had occurred and furnished a description of defendants, their vehicle and license number. Defendant police officers Wank and Horvath arrived in response to plaintiff's phone call. They observed that plaintiff's shirt was torn and bloodstained. Plaintiff related in detail what had transpired and that plaintiff was warned not to summon the police or he would end up in the hospital.

An hour later officer Horvath returned to the Legion Hall and informed plaintiff that the police were detaining four young men and a car fitting the description furnished by plaintiff, about a half block from the dance hall. Horvath asked plaintiff to walk over to the scene of the arrest to identify them. As plaintiff reached a point where he was about to cross Ridgeland Avenue, he observed Sgt. Bartuch standing next to Souliotis at the right front fender of a police car. Officer Wank was on the shoulder of the road just behind Skubis and La Valley. When the assailants and their companions saw plaintiff coming across the street, they renewed their torrent of profanity and obscenity at the top of their voices and shouted that they were going to get plaintiff for calling the police and again threatened then and there to put him and members of his family in the hospital. At this point plaintiff told officer Horvath, "These are the boys, officer, please take them away." Plaintiff was now out in the middle of Ridgeland Avenue and the heavy traffic compelled him to continue across to the west side of the road. Horvath then proceeded across and was between plaintiff and Skubis and LaValley.

The verbal abuse and threats to commit immediate harm continued without any effort or act by any of the police officers to subdue or control these defendants, except, to suggest they quiet down.

Sergeant Bartuch was standing next to Souliotis and had his hand on Souliotis' shoulder, but did nothing to impede or restrain Souliotis from attacking plaintiff.

Souliotis moved a distance of about four or eight feet from Sgt. Bartuch and grabbed plaintiff, picked him up and slammed him upon the trunk of a police car. During this time Souliotis had plaintiff by the throat and shouted incessantly that he was going to keep his promise to kill him. At that instant plaintiff observed officer Demblon pull up in a police car and leap out, run and pull Souliotis from plaintiff and subdue him. As plaintiff was raising himself from the ground where he had fallen from the trunk of the car, plaintiff was grasped by LaValley who screamed in plaintiff's ear that they had warned plaintiff not to call the police or they would kill him if he did so. Defendant Posthuma because of illness, intoxication or fatigue remained in the back seat of the car. Skubis did not participate in the physical attack upon plaintiff.

Eventually the assailants and their companions were placed under restraint and removed to the Village of Worth police station.

Although the initial call by plaintiff was for assistance from Chicago Ridge police, the Worth police participated at the request of Chicago Ridge police in apprehending the assailants, and this took place in the Village of Worth on Ridgeland Avenue, which is the dividing line between the two villages.

The evidence shows that officer Demblon, one of the Village of Worth policemen, arrived at the scene after the assault or at least just as it commenced and thus could not be charged with any negligence in not stopping or restraining the assailants. The court's direction of a not guilty verdict in his favor was proper.

Plaintiff was at the scene at the request of the police to see if he could make identifications. This he did immediately upon arrival. Yet the record shows that for

at least a five-minute interval Souliotis, LaValley and Skubis were on a heavily traveled thoroughfare, under arrest, and they engaged in shouting and yelling obscenities and profanities at plaintiff and casting aspersions on the morals of his daughter and loudly proclaiming their utter disdain, contempt and repeated threats to inflict physical violence upon plaintiff then and there for his failure to adhere to their prior admonitions and warnings.

Bartuch, of the Village of Worth Police Department, testified that at the time of the attack he was successfully restraining Skubis or LaValley from participating. Plaintiff, however, testified that Bartuch had his hand on Souliotis' shoulder when Souliotis managed to leave Bartuch's side and advance on plaintiff and attack him. Horvath and Wank, of the Village of Chicago Ridge Police Department, were standing in the midst of the assailants when the verbal and physical attack upon plaintiff occurred.

▇ We believe that pursuant to Pedrick, supra, the evidence presents a factual question as to whether the defendant police officers, and therefore, their villages, were negligent in failing to take appropriate and sufficient precautions, under the circumstances, to protect plaintiff from being attacked and injured.

▇ Defendant villages contend that the directed verdicts in their favor were proper because: (1) Plaintiff was a trustee of the Village and in that capacity he had a duty to direct and instruct police officers Wank and Horvath in the performance of their police functions and duties and since plaintiff failed to do so, his resulting injuries were the result of his own dereliction of duty; (2) Ill Rev Stats, c 24, § 3–9–4 [2] desig-

---

[2] Conservators of the Peace—Powers

"The mayor, alderman, president, trustees, marshal, deputy marshals, policemen and watchmen, in municipalities, shall be conser-

nates a trustee a conservator of the peace and thus plaintiff had a duty to arrest the assailants and his failure to do so resulted in his being beaten. Neither contention is of any merit. There is no duty imposed upon plaintiff as a trustee to direct and instruct police officers in the performance of their duties, or to make arrests. Plaintiff's authority under the statute is permissive and does not, with great wisdom we discern, oblige a mayor, alderman and other enumerated officeholders to engage in performing the duties of policemen.

■ In view of our resolution of this appeal, we are constrained to discuss the propriety of the trial court's order that limited defendant police officers' testimony under section 60 of the Civil Practice Act on the basis that it was not binding on the codefendants. This was erroneous. In Edwards v. Martin, 2 Ill App2d 34, 117 NE2d 864, this court responded to a similar contention and at page 39 said:

> "A further contention of the defendant is that the testimony of his codefendants, Evans and Reiser, called under section 60 of the Civil Practice Act was not admissible against him.

> "The complaint in separate counts charged liability against Evans, Reiser and the defendant. Plaintiffs called Evans and Reiser as witnesses under section 60 of the Civil Practice Act. Without citation of authority in support thereof the contention is made that their testimony could not be considered as against the defendant. The statute under which Evans and Reiser were called provides substantially that any party to a suit may be examined *as if under cross-examination at the instance of the adverse party or parties*. There is no indi-

vators of the peace. All persons specified in this section, or authorized by any ordinance, shall have power (1) to arrest . . . ."

cation in such provision that the testimony adduced from a party called as a witness thereunder is not admissible against all parties to the suit. So far as the testimony of a party called adversely is concerned, it differs in no respect from any other evidence in the record. It is offered as proof of the facts and circumstances upon which the plaintiff bases his claim to a right to recover. The trial court did not err in holding that the testimony of Evans and Reiser was admissible against the defendant. Illinois Malleable Iron Co. v. Brennan, 174 Ill App 38; Kokan v. Costello, 347 Ill App 41."

We, therefore, affirm the judgment as to defendant Demblon, but reverse and remand for a new trial as to the other police officers and the Villages of Worth and Chicago Ridge.

Affirmed in part, reversed and remanded in part.

DRUCKER and ENGLISH, JJ., concur.