STATE OF INDIANA *v.* ALLAN C. RANKIN, ET. AL.

[No. 373S61. Filed April 4, 1973.]

*Theodore L. Sendak,* Attorney General, *Edward W. Johnson,* Deputy Attorney General, for appellant.

*Dix, Patrick, Ratcliffe & Adamson,* of Terre Haute, *Allan C. Rankin, John W. Truitt, George R. Kern, Richard A. Melloh, Paul T. Edgerton, Michael A. Ard, (Miss) Elizabeth R. Campbell, J. Kenneth Moulton, John M. House, James D. Archer, John E. McCutchan, Mrs. Nancye T. Mitchell, Herbert I. Lamb, William T. Hitch, Richard D. Wells,* for appellees.

HUNTER, J.—This cause is before this Court on a Petition to Transfer filed by the State of Indiana. The cause arose out of a suit initiated by the Attorney General against the trustees, administrators, and certain students of Indiana State University for damages from the destruction of real and personal property which occurred during a disturbance on the Indiana State University campus. Motions to Dismiss under TR. 12 (B) (6) for failure to state a claim upon which relief could be granted were sustained by the trial court without hearing

any evidence. On appeal, the Court of Appeals, First District, affirmed. See *State* v. *Rankin* (1972), 282 N. E. 2d 851.

The main contention of the Motions to Dismiss is that the Attorney General had no authority to institute such a suit. The Court of Appeals properly noted that the office of Attorney General was created by statute and is not a constitutional office. *State ex rel. Steers* v. *Lake Criminal Court* (1953), 232 Ind. 443, 112 N. E. 2d 445, 113 N. E. 2d 44. The Attorney General can therefore only derive authority via statute. The Court of Appeals then stated that it is incumbent upon the Attorney General to demonstrate explicit legal authority granting him the right to initiate the suit. With this statement we do not agree. The Attorney General need not state in his complaint the explicit legal basis for his authority to bring the suit. When the opposing party raises the issue it is then up to the trial judge to determine from all the circumstances whether the Attorney General does have the authority to initiate the action.

As noted above, the question of the Attorney General's power to sue was raised in a Motion to Dismiss pursuant to TR. 12(B)(6). The basis was that the Attorney General was not the real party in interest under TR. 17(A). Our rules provide that the question of real party in interest and other TR. 17 matters are raised by means of a 12(B)(6) motion. A real party in interest objection is similar to the defense of failure to state a claim under 12(B)(6) because it presupposes that the plaintiff does not have the substantive right to enforce the claim he is making.

This Court has noted that in a typical 12(B)(6) situation, a complaint is not subject to dismissal unless it *appears to a certainty* that the plaintiff would not be entitled to relief under *any set of facts. Sacks* v. *American Fletcher National Bank and Trust Co.* (1972), 258 Ind. 189, 279 N. E. 2d 807. See also *Gladis* v. *Melloh* (1971), 149 Ind. App. 466, 273 N. E. 2d 767; *Wyant* v. *Lobdell* (1972), 150 Ind. App. 675, 277 N. E. 2d 595. The rules do *not* require

that the complaint state all the elements of a cause of action. It must be remembered that our new rules are based on so-called notice pleadings in which a plaintiff essentially need only plead the operative facts involved in the litigation. Other means less drastic than dismissal of the action can be used to clarify the theory and basis for the cause of action. Among these are a Motion for a more definite statement under TR. 12(E), our very broad discovery rules, and the pre-trial conference under TR. 16(A)(1). We might note that certain cases from the Court of Appeals apparently state that the plaintiff is required to state in his complaint the theory upon which his claim is based. See, for instance, *Cheatham* v. *City of Evansville* (1972), 151 Ind. App. 181, 278 N. E. 2d 602. Although a statement of the theory may be highly desirable, it is not required. When no evidence has been heard or no affidavits have been submitted, a 12(B)(6) motion should be granted only where it is clear from the *face* of the complaint that under no circumstances could relief be granted. The above stated principles concerning TR. 12(B)(6) generally are equally applicable to a TR. 17(A) real party in interest objection brought under TR. 12(B)(6).

In the case at bar no evidence was heard and no affidavits were submitted pertaining to the question raised by the motion to dismiss. A party authorized by statute to maintain an action is a real party in interest and in the case before us there are at least two statutes under which the Attorney General could derive the authority to bring the present suit. IC 1971, 4-6-2-1 (Ind. Ann. Stat. § 49-1902 [1964 Repl.]) states:

"Such attorney-general shall prosecute and defend all suits that may be instituted by or against the state of Indiana, the prosecution and defense of which is not otherwise provided for by law, whenever he shall have been given ten [10] days' notice of the pendency thereof by the clerk of the court in which such suits are pending, and whenever required by the governor or a majority of the officers of state, in writing, to be furnished him within a reasonable

time; and he shall represent the state in all criminal cases in the Supreme Court, and shall defend all suits brought against the state officers in their official relations, except suits brought against them by the state; and he shall be required to attend to the interests of the state in all suits, actions or claims in which the state is or may become interested in the Supreme Court of this state."

Under this statute he can sue whenever the law does not otherwise permit and whenever he has received written orders from the governor or a majority of the officers of state to do so. The Court of Appeals stated that the statute did not give the Attorney General authority to sue without prior authorization. However, the question of whether prior authorization exists requires a factual determination.

Another statute from which the Attorney General might draw the authority to sue is IC 1971, 5-11-1-9 (Ind. Ann. Stat. § 60-211 [1961 Repl.]), which states in part:

"It shall be the duty of the State examiner, and he is given full power to examine personally or through the deputy examiners and field examiners, all accounts and all financial affairs of every public office and officer *and of every public institution,* including all state offices and *state institutions,* and shall make such examination at least once a year * * * If any such examination discloses malfeasance, misfeasance or nonfeasance in office on the part of any officer or employee, an additional copy of such report shall be made, signed and verified, and it shall be the duty of the state examiner to transmit the same to the attorney general and the attorney general shall institute and prosecute such civil proceedings against such delinquent officer, or upon his official bond or both, as will carry into effect the findings resulting from such examination and secure to the proper municipality the recovery of any funds misappropriated." (our emphasis)

Under this statute if a report disclosed such malfeasance, misfeasance, or nonfeasance the Attorney General would be empowered to sue. We do not believe the report need show conclusively that malfeasance or the like occurred but need only show probable cause for believing it occurred. Whether

such a report was made and transmitted in this case requires in part a factual determination as does the question of whether the report indicates probable cause for believing that malfeasance, misfeasance, or nonfeasance occurred.

Facts could exist under which the Attorney General would have the authority to sue in this instance, and whether such facts are present requires in part a factual determination. It was therefore erroneous to sustain the Motion to Dismiss under TR. 12(B)(6) when it was based only on the face of the complaint. The proper method for determining this issue is through TR. 12(D) and Summary Judgment type proceedings under TR. 56. However, dismissal for want of a real party in interest is not on the merits and would not bar any action which the real party in interest might decide to bring at a later time.

For all the foregoing reasons the judgment of the trial court is reversed and the opinion of the Court of Appeals which affirmed the judgment of the trial court is vacated. We remand the cause to the trial court for further proceedings not inconsistent with this opinion.

Petition to Transfer Granted and Judgment Reversed.

Arteburn, C.J., and Givan, J., concur; DeBruler, J., dissents with opinion in which Prentice, J., concurs.

## DISSENTING OPINION

DeBruler, J.—There is a vast conglomeration of law, comprised of constitutional provisions, statutes both criminal and civil, and case law, which governs the procedures for seeking remedy against offending public servants. For example, Art. 6, §§ 7 and 8 provide for impeachment or removal of state and local officers. Article 7, §§ 11 and 13 provide for discipline and removal of justices, judges and prosecutors. Indiana Code 1971, 18-5-10-33, being Burns § 48-801, provides for impeachment of state officers. Indiana Code 1971, 5-8-1-35, being Burns § 49-836, provides for removal of any officer within the

jurisdiction of a court upon petition of the prosecutor. Officers of municipal corporations are subject to removal for misfeasance under IC 1971, 18-1-20-4, being Burns § 48-1304. And any person who misapplies property of the government entrusted to him is guilty of theft. IC 1971, 35-17-5-11, being Burns § 10-3038. Likewise any public officer under the Constitution or laws of this State who fails to perform any duty in the manner and within the time prescribed is guilty of theft. IC 1971, 35-1-95-1, being Burns § 10-3701. Any public employee may have his employment terminated for many legitimate reasons upon use of fair procedures by the public employer. And of course, greatest of all statutes providing criminal and civil remedies against public officers and employees who mishandle property is the State Board of Accounts Act. IC 1971, 5-11-1-1 to 5-11-8-5, being Burns §§ 60-201 to 60-257.

Every person engaged in public service, be he the highest state officer, or the lowest paid public employee of a municipal corporation or township, is subject to legal and other sanction upon proof of official incapacity or crime. No public servant is exempt from being either disciplined, removed from office or job, or required to respond in damages for loss of public funds or property entrusted to him. No governmental unit is helpless to rid itself of the officer or employee who is incompetent or criminally inclined. However, whenever a public servant is hailed by the Attorney General before the bar of justice to respond in money damages to charges of official misconduct, the statutes which govern such cases must be complied with. This is such a case. Adherence to statutory command is critical here since as all in this case agree, the duties of the Attorney General consist of only those which are specifically assigned to him by legislative enactment. *State ex rel. Steers* v. *Holovachka* (1957), 236 Ind. 565, 142 N. E. 2d 593; *State ex rel. Public Service Commission* v. *Johnson Circuit Court* (1953), 232 Ind. 501, 112 N. E. 2d 429; *State ex rel. Young* v. *Niblack* (1952), 229 Ind. 596, 99 N. E. 2d

839. And it is the courts which have traditionally enforced the statutory limitations upon the powers of the Attorney General by barring his suits when they are found to be without specific authority. *Davis* v. *Pelley* (1951), 230 Ind. 248, 102 N. E. 2d 910; *State ex rel. Bingham* v. *Home Brewing Co.* (1941), 182 Ind. 75, 105 N. E. 909. When the suit is brought by the Attorney General against a public officer or employee for damage to property, as is the case here, the Attorney General must come armed with more than his enthusiasm for the claim.

The statute which governs the case here against the trustees and employees of Indiana State University is the State Board of Accounts Act *and no other*. In cases of this type the Attorney General must be prepared to establish and substantiate the existence of the conditions in that statute which give rise to his authority to exhibit and file his suit. The State Board of Accounts Act, at § 9, IC 1971, 5-11-1-9, being Burns § 60-211, establishes the receipt by the Attorney General of a signed and verified copy of a report of a state examiner disclosing malfeasance, misfeasance or non-feasance in office as the condition precedent to the statutory power of the Attorney General to prosecute a civil proceeding to recover a loss against the officer who was the subject of such report. I do not agree with the majority when they conclude that such a report of a state examiner need only establish probable cause to believe a malfeasance has occurred. This interpretation is an unnecessary incursion upon the balance reached in the statute between the interests of the officer charged and that of the State; it ignores the plain words of the statute; and ignores the tremendous power granted the State Board of Accounts to compel testimony and production of evidence in furtherance of its duty to make investigation of public accounts. When the Attorney General exhibits his civil suit against a public officer for misfeasance in the handling of property, and existence of the necessary statutory precedent conditions to such suit are challenged, as they properly are

here by a motion under Rule 12 (B), the burden must be upon the Attorney General to show the conditions. In this case in resisting the challenge, the Attorney General chose to rely upon three items: namely, (1) a letter exhibited in the complaint from a state examiner, solicited by the Attorney General himself, detailing the damage to university property; and (2) a paragraph of his complaint containing a bald claim that he had authority to sue under IC 1971, 4-6-2-1, being Burns § 49-1902; plus (3) a twenty-seven page memorandum and brief. The Attorney General at no time in the trial court asked for an opportunity to give evidence in support of his opposition to any of the motions of any of the defendants to dismiss. He has never claimed, up to this very day that his authority to bring this suit was not properly subjected to litigation by a motion to dismiss. And it was not until this case was on appeal that the Attorney General complained that he was denied an opportunity to submit evidence to the trial court in opposition to the motion to dismiss. And he does not even suggest to this Court what evidence he possesses, which was not considered by the trial court in ruling on the motions to dismiss, which evidence, if believed, might lead the trial court to change its mind and overrule the motions. The Attorney General did not even exercise his right to amend the complaint so as to support the existence of the statutory conditions. On the basis of this record and the allegations of the Attorney General in his briefs, it does not appear that the motion was unfairly determined in the court below, and therefore I would not reverse. AP. Rule 15 (D). I would however under these circumstances retain jurisdiction of this appeal, and issue a remand order to the trial court with instructions to afford the State an opportunity to present its evidence on the motions to dismiss, and upon completion of such hearing to certify back to this Court a transcript of such evidence to this Court together with special findings and conclusions of law thereon. This is the relief which I consider appropriate in this case. AP. Rule 15 (M) (6).

Prentice, J., concurs.

NOTE.—Reported in 294 N. E. 2d 604.